UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW JONES,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | Civil Action No. 16 –07 (APM) |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS THE DISTRICT OF COLUMBIA AND WILLIAM SMITHS' MOTION TO DISMISS

## INTRODUCTION

This matter arises from plaintiff's arrest and detention under a warrant for his escape from a halfway house where he was serving the final six months of a five-year federal prison sentence. The warrant was issued by the U.S. Marshal Service when plaintiff left the halfway house to go to his authorized job, but failed to report to work. Although plaintiff returned to the halfway house and remained there until he completed his sentence, the warrant was never withdrawn.

Plaintiff was arrested by the D.C. Metropolitan Police Department on the outstanding warrant and detained for eight weeks at Central Detention Facility. Now, plaintiff sues the District of Columbia (the District) and Central Detention Facility Warden William Smith under 42 U.S.C. § 1983 and the common law. Because the District and its employees reasonably relied on the warrant issued by the federal government, plaintiff's claims should be dismissed.

**FACTS**[1]

On March 19, 2014, the Bureau of Prisons (BOP) transferred plaintiff to Hope Village halfway house in Washington, D.C., to serve the remaining six months of his five-year sentence of incarceration. (Compl. ¶¶ 18-19). On October 10, 2014, plaintiff left Hope Village to go to work, but failed to report to his place of employment. (Compl. ¶ 21). Hope Village filed a notice of escape with BOP, and the U.S. Marshal Service (USMS) issued a warrant. (Compl. ¶ 22). Although plaintiff returned to Hope Village before 6:00 p.m. that night, the warrant was not withdrawn. (Compl. ¶ 23).

When plaintiff was released on November 3, 2014, Hope Village gave him a printout listing his federal Court Services and Offender Supervision Agency (CSOSA) assignment for his period of supervision. (Compl. ¶¶ 24, 26). As directed by the printout, plaintiff reported to CSOSA on November 5, 2014. (Compl. ¶ 29). Upon arrival, he was informed by his CSOSA Community Supervision Assistant he would be arrested on the outstanding warrant for his October 10, 2014 "escape" from Hope Village. (Compl. ¶ 31). The Supervision Assistant called the Metropolitan Police Department (MPD) to execute the warrant. (Compl. ¶ 31).

Plaintiff was arrested, taken to the 6th District precinct, and transferred to Central Detention Facility (CDF). (Compl. ¶¶ 38-39). Like all arriving arrestees, plaintiff was searched when he arrived at CDF. (Compl. ¶ 39). The following day

[1] The District does not dispute the allegations of the Complaint solely for purposes of this motion. However, the District reserves the right to dispute the allegations for all other purposes.

plaintiff was placed in the custody of the USMS at the arraignment court. (Compl ¶¶ 40-41). Plaintiff was "no papered," and the marshals ordered him to return to CDF. (Compl. ¶ 42)

After being searched upon re-arrival at CDF on November 6, 2014, plaintiff was processed by legal instrument examiners Doe 4 and Doe 5. (Compl. ¶ 44). Plaintiff's case manager, Doe 2, first met with plaintiff November 7, 2014 and then nearly weekly during his detention. (Compl. ¶ 46). Plaintiff alleges he told Doe 2 he completed his sentence at Hope Village, and that Doe 2 failed to investigate his claim. (Compl. ¶¶ 46-48).

On January 2, 2015, plaintiff's father spoke with Hope Village and BOP about the inaccurate escape warrant. (Compl. ¶¶ 51-53). Following the phone calls, plaintiff was released. (Compl. ¶ 54).

Now, plaintiff brings two claims against the District of Columbia and CDF Warden William Smith: one claim under 42 U.S.C. § 1983 for deliberate indifference in violation of the Fifth Amendment and one claim under D.C. common law for negligent supervision.

## ARGUMENT

### I. Standard of Review

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007)). The Court should not accept facts unsupported by allegations in the complaint or the plaintiff's legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## II. The District's Reliance on a Facially Valid Warrant Issued by the Federal Government Did Not Constitute "Deliberate Indifference" to Plaintiff's Constitutional Rights.

### A. Municipal Liability Under § 1983

To state a claim against the District under 42 U.S.C. § 1983, plaintiff must allege both an underlying constitutional violation and a basis for municipal liability. *Brown v. District of Columbia,* 514 F.3d 1279, 1283 (D.C. Cir. 2008). First, "a complaint must allege facts sufficient to support a reasonable inference that (1) a person (2) acting under color of state, territorial, or District of Columbia law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States." *Jones v. Delaney*, 610 F. Supp. 2d 46, 49 (D.D.C. 2009) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985)). Then, because *respondeat superior* or vicarious liability will not attach under § 1983, *City of Canton v. Harris,* 489 U.S. 378, 385 (1989), "[t]o impose liability on the District under … § 1983, [a plaintiff] must show 'not only a violation of his rights under the Constitution or federal law, but also that the District's custom or policy *caused* the violation.'" *Feirson v. District of Columbia,* 506 F.3d 1063, 1066 (D.C. Cir. 2007) (quoting *Warren v. District of Columbia,* 353 F.3d 36, 38 (D.C. Cir. 2004)).

The causation pleading requirement for a § 1983 claim is only met where the complaint "include[s] some factual basis for the allegation of a municipal policy or custom," sufficient to pass muster "under the standard set by the Supreme Court in *Twombly* and *Iqbal*." *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 213 n.2 (D.D.C. 2009). There are four basic categories of municipal action which, if proven, may subject a municipality to liability: "(1) an expressed municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference. *Hunter v. District of Columbia,* 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978)).

Plaintiff does not allege that the District has an "official" policy of unlawfully arresting, searching or detaining inmates. Accordingly, plaintiff must provide specific allegations of a continuing policy or pattern of unconstitutional conduct either condoned or deliberately ignored by the District.

### B. Plaintiff Fails to State a Claim for Deliberate Indifference.

"[T]o establish a substantive Due Process claim, a plaintiff must show that the state actor was deliberately indifferent to his constitutional rights and that such conduct shocks the conscious." *Cohen v. District of Columbia*, 744 F. Supp. 2d 236, 243 (D.D.C. 2010); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("[T]he threshold question is whether the behavior…[was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."). "[T]he doctrine of substantive due process constrains only egregious government misconduct." *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003) (citing

*Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness")).[2] "A showing of simple or even heightened negligence will not suffice." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). As this Circuit has held, deliberate indifference "does *not* require the city to take reasonable care to discover and prevent constitutional violations," but "simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (emphasis in original).

Plaintiff's deliberate indifference claim can only succeed if the District's reliance on the USMS warrant, notwithstanding plaintiff profession of innocence, constitutes egregious government conduct that shocks the conscious *and* it if that egregious conduct was caused by policy or pattern which condones or ignores such violations. The Complaint falls short of both.

Many paragraphs under Count IV are red herrings; they relate to prior litigation involving overdetention during release processing, or overdetention caused by errors calculating release dates. (*See* Compl. ¶¶ 94-98, 104, 111).[3] Plaintiff does not allege either of those things happened to him. Pairing down the

---

[2] *Silverman* identified two ways by which a plaintiff might show such unfairness: "a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights . . . ." *Silverman*, 845 F.2d at 1080. Plaintiff cannot meet either standard.

[3] For example, Plaintiff's allegation that the District had "actual or constructive knowledge that lengthy overdetentions due to sentencing miscalculations by DOC or federal agencies would inevitably occur," (Compl. ¶ 111), does nothing to support an inference that the District had actual or constructive knowledge that inmates would be unlawfully detained if the District relied on a facially valid warrant issued by the USMS.

Complaint to allegations related to plaintiff Jones' detention, Count IV alleges: (1) Warden Smith and the District should have better supervised and trained CDF employees to investigate inmate claims of innocence (Compl. ¶¶ 106-108, 110) and (2) the *Wormley* case put the District and Warden Smith on notice of "[t]he problem of overdetention due to DOC's reliance on information from BOP and USMS" (Compl. ¶¶ 99-101). Neither of these allegations will carry the day for a deliberate indifference claim.

The first allegation—that the District failed to properly supervise and train employees on investigating inmate complaints—is not "deliberate indifference." *See Moore v. Tartler*, 986 F.2d 682, 687 (3rd Cir. 1993) (even "slow and incompetent" investigation of an inmate's claims he is being wrongfully detained does not constitute "deliberate indifference"). Allegations of simple or even heightened negligence cannot support a deliberate indifference claim. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). To be "deliberately indifferent" the District must have had actual or constructive knowledge that reliance on the federal agency warrant would violate plaintiff's rights. Taking all the facts an inferences in the light most favorable to plaintiff, this conclusion is unsupported. The District's reliance on the facially valid USMS warrant was neither "egregious" nor "so outrageous, that it may fairly be said to shock the contemporary conscience." *See Lewis*, 523 U.S. at 847 n.8.

Plaintiff's second allegation—that the *Wormley* case illustrates a pattern of deliberate indifference—is also unsupported. In *Wormley*, the plaintiff was detained

by DOC based on instruction from the USMS to execute a "Detainer Based on Federal Parole Violation Warrant" the USMS issued. *Wormley v. United States*, 601 F. Supp. 2d 27, 30-31 (D.D.C. 2009). However, Wormley had never been on parole so the warrant was inaccurate. *Id.* at 30. When the warrant was lifted, Wormley was not immediately released. *Id.* at 31.

Plaintiff suggests the *Wormley* case demonstrates the District was on notice of "the problem of overdetention due to DOC's reliance on information from BOP and USMS." (Compl. ¶ 99). But *Wormley* involved only one inmate. It is not sufficient to establish there was a "problem." That BOP or USMS information was inaccurate one time in the past does not make reliance on a USMS warrant so egregious that it shocks the conscious.

Even if it illustrated a pattern of overdetention, that would not support plaintiff's deliberate indifference claim. Plaintiff himself defined "overdetention" to be when someone is "released after 11:59 p.m. on the day they are ordered released, or alternatively, situations where the end of a sentence calculation was computed incorrectly." (Compl. ¶ 96). Plaintiff does not allege he was overdetained; he contends his detention should not have occurred at all—that it was unlawful detention.

The Complaint also fails to plead a municipal policy which condoned or deliberately ignored constitutional violations against plaintiff. "Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under [42 U.S.C. § 1983]." *Silverman v. Barry*, 845

F.2d 1072, 1080 (D.C. Cir. 1988). Count IV should be dismissed because plaintiff has not satisfied pleading requirements under § 1983 and fails to state a claim for deliberate indifference.

## III. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 Against Warden Smith.

### A. Warden Smith is Entitled to Qualified Immunity.

Warden Smith is entitled to qualified immunity because the Complaint fails to plead facts under which to find Smith violated plaintiff's clearly established constitutional rights. "The doctrine of qualified immunity bars government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). "The protection of qualified immunity applies regardless of whether the official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231. It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome an assertion of qualified immunity, plaintiff must demonstrate (i) the defendant's action violated a constitutional right and (ii) that the constitutional right was "clearly established" at the time of the alleged violation—

meaning it was "sufficiently clear that a reasonable officer would have understood" he was violating the right. *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001) (citing *Anderson*, 483 U.S. at 640). It is within the Court's discretion to decide which of the two prongs to address first. *Pearson*, 555 U.S. at 242.

As explained in Section II-B, there was no constitutional violation. Plaintiff was detained under a facially valid warrant. And there is no allegation that Warden Smith knew or had reason to believe that the warrant was inaccurate. No reasonable official in Warden Smith's position would have understood that reliance on information from the U.S. Marshal service would be "deliberately indifferent" to plaintiff's constitutional rights.

### B. Official Capacity Immunity Bars Plaintiffs Claim Against Warden Smith in His Official Capacity.

"Government officials sued in their official capacities are not personally liable for damages." *Abdullah v. Washington*, 437 F. Supp. 2d 137, 140 (D.D.C. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). "A section 1983 suit for damages against municipal officials in their official capacities is…equivalent to a suit against the municipality itself." *Atchison v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). Thus, "the claims are barred because any monetary recovery will come from the government's treasury." *Abdullah*, 437 F. Supp. 2d at 140. Counts I, II, and III against the individual District defendants in their official capacities should be dismissed. *See id.* (dismissing all claims against individual employees of the District of Columbia in their official capacities).

## IV. Plaintiff Fails to State a Claim for Negligent Supervision.

To demonstrate liability under a theory of negligent supervision, the plaintiff must show the "employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010) (citing *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)). The alleged negligence also must be the proximate cause of plaintiff's injuries. *See District of Columbia v. Banks*, 646 A.2d 972 (D.C. 1994).

Plaintiff alleges Warden Smith knew or should have known his subordinates "were failing to correct lengthy cases of overdetention" based on weekly and monthly audits, or that he failed to review the reports or train and supervise staff who implemented them to prevent overdetention. (Compl. ¶ 154). Even if these allegations are accepted as true, plaintiff has not alleged facts to support this supposed negligent supervision was the proximate cause of his injuries. As explained in section II-B, plaintiff does not allege he was overdetained. Therefore, Warden Smith's alleged failure to review or implement audits on overdetention cannot be the proximate cause of plaintiff's injuries. His negligent supervision claim, Count XI, should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: March 11, 2016.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Deputy Attorney General
Public Interest Division

*/s/ Toni Michelle Jackson*
TONI MICHELLE JACKSON, Bar No. 453765
Chief, Equity Section

*/s/ Amanda J. Montee*
AMANDA J. MONTEE, Bar No. 1018326
Assistant Attorney General
Suite 630 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Counsel for Defendant*
*The District of Columbia*